MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, New York 10005
(212) 530-5000
Peter K. Newman, Esq.
Craig M. Price, Esq.

*Attorneys for Patrick Willcocks*
*as Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| AVANTI COMMUNICATIONS GROUP PLC,[1] | ) Case No. 18-_____ |
| | ) |
| | ) |
| Debtor in a Foreign Proceeding. | ) Chapter 15 |
| | ) |

**VERIFIED PETITION FOR RECOGNITION**
**OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF**

PATRICK WILLCOCKS, in his capacity as the duly appointed foreign representative (the

"Foreign Representative") of Avanti Communications Group plc (the "Debtor", and together with

its direct and indirect subsidiaries, "Avanti"), a public limited company incorporated under the

laws of England and Wales, which is the subject of proceedings (the "English Proceeding")

currently pending before the High Court of Justice of England and Wales ("English Court")

concerning a scheme of arrangement (the "Scheme")[2] pursuant to Part 26 of the Companies Act

of 2006 of England and Wales (as modified, amended or re-enacted from time to time, the

---

[1]    Avanti Communications Group plc is the Debtor in this chapter 15 case (the "Chapter 15 Case") and the identifying four digits of the tax identification number of such Debtor are: Avanti Communications Group plc (0137). The location of the Debtor's corporate headquarters and registered office is Cobham House, 20 Black Friars Lane, London, EC4V 6EB, United Kingdom. The Debtor's company registration number is 06133927.

[2]    A copy of the Scheme, and certain other documents relating to the Scheme, are attached as exhibits to the *Declaration of Patrick Willcocks in Support of Verified Petition for Recognition of Foreign Main Proceeding and Certain Related Relief* (the "Willcocks Declaration") dated February 21, 2018 and filed contemporaneously herewith.

"Companies Act").  The Foreign Representative has commenced this case ancillary to the English Proceeding and respectfully submits this *Verified Petition for Recognition of Foreign Main Proceeding and Certain Related Relief* (the "Verified Petition" and together with the Chapter 15 Voluntary Petition [Dkt. No. 1], the "Petition"), seeking entry of an order, pursuant to sections 105(a), 1504, 1507, 1515, 1517, 1520 and 1521 of title 11 of the United States Code (the "Bankruptcy Code"), in the form annexed hereto as Exhibit A (the "Proposed Order"): (i) granting recognition of  the English Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code, (ii) granting all relief afforded to foreign main proceedings under section 1520 of the Bankruptcy Code, (iii) recognizing, granting comity to, and giving full force and effect in the United States to the English Proceeding, the Scheme, the Convening Order and the Sanction Order, and (iv) enjoining parties from taking any action inconsistent with the Scheme in the United States, including giving effect to the releases set out in the Scheme (the "Releases"), including certain releases (the "Guarantor Releases") given in favor of certain of the Debtor's direct and indirect subsidiaries that guaranteed the 2023 Notes (the "Subsidiary Guarantors").

In support of this Verified Petition, the Foreign Representative refers the Court to the statements contained in: (A) the Willcocks Declaration, and (B) the *Declaration of Nicholas Angel as English Counsel to Debtor in Support of Verified Petition for Recognition of Foreign Main Proceeding and Certain Related Relief* (the "Angel Declaration" and together with the Willcocks Declaration, the "Supporting Documents"), which are each submitted concurrently herewith and incorporated  herein by reference.   In further support of the relief requested, the Foreign Representative respectfully  represents as follows:

## PRELIMINARY STATEMENT

Avanti is a satellite operator headquartered in London, England that provides fixed satellite services to customers in Europe, the Middle East and Africa through its fleet of Ka-band satellites.

Avanti has for several years been pursuing an expansion of its satellite fleet and, due primarily to extended delays associated with the manufacture, procurement and launch of two satellites, Avanti has experienced financial difficulties and finds itself with a materially over-leveraged capital structure. The Debtor entered into extensive arm's-length negotiations with certain of its shareholders and its financial creditors, including an ad hoc group of holders (the "Ad Hoc Group") of the Debtor's (i) $323.3 million of 10%/15% Senior Secured Notes due 2021 (the "2021 Notes") and (ii) $557 million of 12%/17.5% Senior Secured Notes due 2023 (the "2023 Notes" and together with the 2021 Notes, the "Notes"), and agreed to the terms of a comprehensive restructuring (the "Restructuring"), which provides for, among other things, the exchange of the 2023 Notes for 92.5% of the then enlarged share capital of the Debtor (the "2023 Notes Equitization"), as well as certain amendments to the terms of the 2021 Notes including, among other things, an extension of the final maturity date from October 1, 2021 to October 1, 2022, and a reduction of the interest payable from 10% cash or 15% PIK to 9% cash or 9% PIK (the "2021 Notes Amendments"). The Scheme will implement the 2023 Notes Equitization while the 2021 Notes Amendments have previously been approved through out-of-court consent solicitations, which the Debtor launched on January 25, 2018, in relation to the Notes (the "Consent Solicitations").

To effectuate the Scheme, on February 15, 2018, the Debtor applied to the English Court for permission to convene a meeting of its creditors for the purpose of considering and approving the Scheme. The English Court considered that application at a hearing on February 19, 2018 (the "Convening Hearing"), and issued an order (the "Convening Order"),[3] which, among other things, ordered the convening of a meeting (the "Scheme Meeting") of the holders of the 2023 Notes (the

---

[3]    A copy of the Convening Order is annexed as Exhibit B to the Willcocks Declaration.

"Scheme Creditors") on March 20, 2018.[4]  If the Scheme is approved by the Scheme Creditors

voting at the Scheme Meeting (which Avanti believes is likely to be the case because, among other

things, the Ad Hoc Group and other holders of 2023 Notes have agreed to support the Scheme in

the Restructuring Agreement and have already overwhelmingly granted consents to amendments

to the 2023 Indenture requested in anticipation of the Scheme), the English Court is scheduled to

hold a hearing on March 26, 2018 (the "Sanction Hearing") to consider whether to enter an order

sanctioning the Scheme (the "Sanction Order").  As set forth herein, granting the requested relief

is appropriate because, among other reasons, the English Proceeding, which is a proceeding in

respect of an English scheme of arrangement, is a "foreign proceeding" (as courts, including in

this District, have consistently found), the Debtor's center of main interests is located in the United

Kingdom, and the Foreign Representative is a proper "foreign representative," having been

appointed by both the Debtor's board of directors and the English Court in the Convening Order.

See 11 U.S.C. §§ 1515, 1517.  In addition, as described further below, the Debtor asks the Court

to recognize and enforce the Releases, including the Guarantor Releases, all in connection with

the Scheme and in accordance with the applicable standards under chapter 15.

Although it has limited assets in the United States, the Debtor, out of an abundance of

caution and in consultation with its key stakeholders, has determined to seek recognition under

chapter 15 of the Bankruptcy Code because: (i) the 2023 Notes are governed by New York law

and until recently provided for the parties to the 2023 Indenture to submit to the jurisdiction of the

New York state and federal courts with respect to any dispute arising out of or in connection with

the 2023 Indenture or 2023 Notes,[5] and (ii) a minority creditor previously attempted to undermine

---

[4]      As noted herein, the Scheme Creditors are composed of one voting class of the holders of the 2023 Notes.

[5]      In anticipation of the Scheme, the Debtor obtained consent from over 87% of holders of the 2023 Notes to
amend the submission to jurisdiction provision in the 2023 Indenture from New York state or federal courts

a prior consensual out-of-court restructuring by bringing an (ultimately unsuccessful) action in New York State Court.[6]

As set forth below, the requested relief is appropriate as the English Proceeding grants substantial due process rights to the Debtor's affected creditors that sufficiently protect their interests and is consistent with, and clearly not manifestly contrary to, public policy of the United States.

Accordingly, the Debtor respectfully requests that the Court grant recognition of the English Proceeding as a "foreign main proceeding," enforce the terms of the Scheme within the United States, and grant related relief in support thereof.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to sections 157 and 1334 of title 28 of the United States Code, section 1501 of the Bankruptcy Code, and the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re: Title 11, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(P).

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1410 as the Debtor has assets in the United States located in New York. The statutory predicates for the relief requested are sections 105(a), 1504, 1507, 1515, 1517, 1520 and 1521 of the Bankruptcy Code. The Foreign Representative has properly commenced this case pursuant to sections 1504 and 1509 of the

---

to the exclusive jurisdiction of the Courts of England and Wales until the Restructuring Agreement (as defined below) is either terminated or no longer in effect.

[6]      In May 2017, Rimrock High Income Plus (Master) Fund, Ltd., which currently holds approximately 7.7% of the 2023 Notes, brought an action against the Debtor and certain of its subsidiaries challenging a prior restructuring of the Debtor implemented through a consent solicitation with the consent of the vast majority of its bondholders. The appeals court dismissed the action in its entirety for failure to comply with the collective action provisions of the 2023 Indentures. See Rimrock High Income Plus (Master) Fund, Ltd v. Avanti Commc'n Grp., 2018 N.Y. App. Div. LEXIS 258 [1st Dep't 2018].

Bankruptcy Code by filing a petition for recognition of the English Proceeding under section 1515 of the Bankruptcy Code.

## BACKGROUND

### A.    Overview of the Debtor's Business

3.    The Debtor is a public limited company incorporated under the laws of England and Wales, with subsidiaries incorporated in England, Isle of Man, Germany, Sweden, Turkey, Cyprus, Kenya, Nigeria, Tanzania and South Africa.  The Debtor's shares are admitted to trading on the Alternative Investment Market (AIM) of the London Stock Exchange.  The Debtor's headquarters and primary place of business is in London, England.

4.    The Debtor is a satellite operator providing fixed satellite services in Europe, the Middle East and Africa through its fleet of Ka-band satellites.[7]  The Debtor's satellite fleet is positioned in orbital slots that are recorded in the International Telecoms Union Master International Frequency Register.  The Debtor sells satellite data communications services on a wholesale basis to a range of service providers who supply four key end markets:  broadband, government, enterprise and backhaul.  The Debtor's current fleet consists of two Ka-band satellites, HYLAS 1 and HYLAS 2, which have been commercially operational since April 2011 and November 2012.  A further satellite, Artemis, a multiband satellite acquired from the European Space Agency (ESA) on December 31, 2013, was successfully re-orbited in November 2017.  The Debtor also has leased a steerable Ka-band beam, HYLAS 2-B, under an indefeasible right of use agreement entered into in June 2015 with another satellite operator, and also has a payload, HYLAS 3, under construction which will be deployed on the ESA's EDRS-C satellite.  HYLAS 3

---

[7]    Ka-band systems have higher frequency ranges and significantly higher spectral efficiency than satellite systems operating in other bands, such as Ku-band and C-band, allowing larger data carrying capacity at comparatively lower cost.

is currently under construction and continues to experience delays.  It is now expected to launch in the first three months of 2019 (although this date is subject to further change).[8]

5.    The Debtor's HYLAS 4 satellite, which will complete its coverage of Europe, the Middle East and Africa, has now been constructed after experiencing some delays in the factory and, in February 2017, was successfully delivered to its launch site in Kourou, French Guyana. HYLAS 4 is scheduled to launch in mid-March 2018, with the target of being in orbital position ready for service in July 2018 with sufficient fuel to support the satellite for up to 19 years in orbit. HYLAS 4 is expected to generate revenue from July 2018, largely within Avanti's existing fixed cost base, and to have a strong positive effect on the Debtor's business as it completes EMEA coverage and greatly increases the amount of capacity available in mature markets in Western Europe and new markets in Africa.  The efficient procurement of HYLAS 4 will bring the overall fleet cost per MHz down significantly, mitigating some of the effects of falling global prices for satellite bandwidth.  Avanti is in discussions with a number of current and new distributors to sign up master partnership distribution agreements to market this new capacity, which is largely directed over sub-Saharan Africa countries.

B.    **The Company's Capital Structure**

6.    As of December 31, 2017, the Debtor's capital structure was composed of the following material financing agreements:

- $118 million in aggregate principal amount of indebtedness under a super senior term loan facility agreement (the "<u>Super Senior Facility Agreement</u>"), maturing in 2020 (the "<u>Super Senior Facility</u>");[9]

---

[8]    The Debtor anticipates that its HYLAS 3 and HYLAS 4 satellites will primarily address high-growth markets in Africa and the Middle East, where terrestrial-based communications infrastructure is generally less developed and often not economically viable to develop, as well as providing back-up and growth capacity over Europe.

[9]    The Super Senior Facility Agreement is subject to English law and subject to the exclusive jurisdiction of the English Courts.

- $323.3 million in aggregate principal amount the 2021 Notes issued pursuant to the 2021 Indenture;[10]

- $557 million in aggregate principal amount of the 2023 Notes issued pursuant to the 2023 Indenture;[11] and

- The Notes and the Super Senior Facility are subject to an Intercreditor Agreement.[12] Pursuant to the Intercreditor Agreement, the claims of lenders to the Super Senior Facility Agreement rank pari passu amongst themselves and senior to the claims of both the holders of the 2021 Notes and the holders of the 2023 Notes (i.e., the Scheme Creditors). The claims of the holders of the 2021 Notes rank pari passu amongst themselves and senior to the claims of the Scheme Creditors, and the claims of the Scheme Creditors rank pari passu amongst themselves.

7.     As of December 31, 2017, the Debtor had approximately $68.0 million of cash and cash equivalents.

**C.     Restructuring Negotiations and the Restructuring Agreement**

8.     Due to delays associated with the manufacture, procurement and launch of two of its satellites, Avanti has experienced financial difficulties and finds itself with a materially over-leveraged capital structure. As a result, the Debtor entered into preliminary discussions with the Ad Hoc Group regarding a proposed comprehensive restructuring of its indebtedness that would

---

[10]    The "2021 Indenture" means that certain indenture, dated as of January 26, 2017, as amended and restated as of March 23, 2017 and as further supplemented by a first supplemental indenture, dated as of June 29, 2017, a second supplemental indenture, dated as of June 30, 2017, and a third supplemental indenture, dated as of October 27, 2017, among, inter alios, the Debtor, certain subsidiaries of the Debtor, as guarantors, The Bank of New York Mellon, London Branch, as trustee (the "2021 Trustee") and primary security agent and Wilmington Trust (London) Limited, as secondary security agent (as so amended, restated and supplemented).

[11]    The "2023 Indenture" means that certain indenture, dated as of October 3, 2013, as amended and restated as of March 23, 2017 and as further supplemented by a first supplemental indenture, dated as of June 30, 2017, and a second supplemental indenture, dated as of October 27, 2017, among, inter alios, the Debtor, certain subsidiaries of the Debtor, as guarantors, The Bank of New York Mellon, London Branch, as trustee (the "2023 Trustee" and together with the 2021 Trustee, the "Trustees") and primary security agent and Wilmington Trust (London) Limited, as secondary security agent (as so amended, restated and supplemented). The 2023 Indenture together with the 2021 Indenture, the "Indentures."

[12]    The "Intercreditor Agreement" means that certain intercreditor agreement, dated January 26, 2017, as amended from time to time, and entered into by, amongst others, the Debtor, The Bank of New York Mellon, London Branch as trustee and primary security agent and Wilmington Trust (London) Limited as secondary security agent under the Indentures and the subsidiaries of the Debtor as original debtors named therein.

create a sustainable long-term capital structure from which to further develop its business.  On December 13, 2017 and thereafter, the Debtor and certain members of the Ad Hoc Group and other holders of the Notes (together, the "<u>Consenting Creditors</u>") have become party to a restructuring agreement (the "<u>Restructuring Agreement</u>"),[13] pursuant to which the parties agreed to implement the Restructuring comprised primarily of the 2023 Notes Equitization and the 2021 Notes Amendments.

### D.    Description of the Scheme

9.    <u>2023 Notes Equitization</u>.  Pursuant to the terms of the Scheme, all of the Debtor's outstanding 2023 Notes will be exchanged (the "<u>Exchange</u>") for 92.5% of the Debtor's then enlarged issued share capital (the "<u>Exchange Shares</u>"). The Exchange Shares will be allocated and issued to the Scheme Creditors on a pro rata basis based on the principal amount of 2023 Notes held by each Scheme Creditor as at the Record Time.[14]  Following the Exchange, the 2023 Notes will be cancelled in their entirety and cease to exist, together with all accrued unpaid interest relating to the 2023 Notes.  Consummation of the 2023 Notes Equitization pursuant to the Scheme will result in Avanti achieving a deleveraging of approximately $557 million in aggregate principal amount of the 2023 Notes and savings of approximately $81 million in interest expense savings per year.

10.    <u>Releases</u>.  Pursuant to the Scheme, the Scheme Creditors will grant the Releases, including the Guarantor Releases.  The Releases themselves include releases of any claim or liability, whether present or future, known or unknown, prospective or contingent, against the Debtor arising directly or indirectly out of, from or in connection with, the 2023 Notes and the

---

[13]    A copy of the Restructuring Agreement is attached to the Willcocks Declaration as <u>Exhibit D</u>.

[14]    The Record Time has been designated as 5:00 p.m. New York time on March 12, 2018.

2023 Indenture, including in respect of any accrued but unpaid interest, other than any claim or liability arising after the "Restructuring Effective Date", being the first date upon which all of the conditions precedent to the Restructuring have become effective, and held by a person that is a shareholder of the Debtor as a result of receiving share allocations pursuant to the Scheme. The Guarantor Releases will preclude Scheme Creditors from seeking to recover under guarantees of the 2023 Notes provided by each of the Debtor's subsidiaries. The Releases and the Guarantor Releases that the Scheme Creditors will grant under the Scheme are typical of the sort of relief routinely granted in connection with creditor schemes of arrangement similar to the proposed Scheme and which have also been approved in chapter 15 cases. See Angel Declaration ¶ 26. See, also, Codere Finance (UK) Limited [2015] EWHC 3778 (Ch) (scheme creditors irrevocably waived and released scheme claims (including claims against group company guarantors) and undertook to treat the scheme claims as waived and released subject to carve-outs; In re Zlomrex Int'l Fin. S.A., Case No. 13-14138-SHL (Bankr. S.D.N.Y. Jan. 31, 2014) [Dkt. No. 17] (scheme claims (including guarantee claims) were assigned to a special purchase vehicle and ultimately discharged in exchange for an intercompany note); In re New World Res. N.V., Case No. 14-12226-SMB (Bankr. S.D.N.Y. Sept. 9, 2014) [Dkt. No. 20] (scheme provided for broad release of claims arising out of finance documents, among other things, against subsidiary guarantors); In re Towergate Fin. plc, Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015) [Dkt. No. 16] (similar to New World Resources); In re Magyar Telecom B.V., Case No. 13-13508-SHL (Bankr. S.D.N.Y. Dec. 11, 2013) [Dkt. No. 26]; In re EnQuest PLC, Case No. 16-12983-MEW (Bankr. S.D.N.Y. Nov. 17, 2016) [Dkt. No. 14]; In re Hibu, Case No. 14-70323-REG (Bankr. E.D.N.Y. Feb. 27, 2014) [Dkt. No. 29].

### E.    Implementation of the Restructuring

11.    The Debtor previously sought to implement certain aspects of the Restructuring

pursuant to the Consent Solicitations.   Among other things, the Consent Solicitations sought

consents from the holders of the 2021 Notes and the 2023 Notes (i.e., the Scheme Creditors), as

applicable, for the following amendments:

(1)   The 2021 Notes Restructuring Amendments. Amend the 2021 Indenture to:

(a)   extend the final maturity date of the 2021 Notes from October 1, 2021 to October 1, 2022;

(b)   change the interest rate payable on the 2021 Notes from 10% Cash Interest or 15% PIK interest to 9% cash interest or 9% PIK interest for all remaining interest periods commencing October 1, 2017;

(c)   eliminate the Maintenance of Minimum Consolidated LTM EBITDA covenant contained in Section 4.30 of the 2021 Indenture, which would require testing on the last day of each fiscal quarter commencing March 31, 2018 and ending on March 31, 2020;

(d)   permit the issuance of up to $30 million of additional Indebtedness which will rank junior to or pari passu with the 2021 Notes;

(e)   eliminate the Margin Increase payable on the 2021 Notes if the relevant Minimum Consolidated LTM EBITDA threshold was not met; and

(f)   permit interest payments on the 2021 Notes for all remaining interest periods commencing October 1, 2017 (but excluding the final interest payment) to be paid as PIK interest if the Debtor does not have sufficient cash to satisfy the applicable interest coupon

(collectively (a) – (f), the "2021 Notes Restructuring Amendments");[15]

(2)   The Jurisdiction Amendment. Amend the submission to jurisdiction provision of the 2023 Indenture so that each party thereto will submit to the exclusive jurisdiction of English Courts (the "Jurisdiction Amendment") until the Restructuring Agreement is either terminated or no longer in effect; and

(3)   The Consent Solicitation Amendments. Amend and waive certain bankruptcy-related events of default within the Indentures (the "Majority

---

[15]   The 2021 Notes Restructuring Amendments will result in interest expense savings of approximately $11 million per year as a result of the elimination of the Margin Increase and assuming the Debtor pays interest at 9% per annum on the 2021 Notes for all remaining periods up to maturity.

Amendments and Waiver", together with the 2021 Notes Restructuring Amendments and the Jurisdiction Amendment, the "Consent Solicitation Amendments"), to prevent the occurrence of an event of default under the Notes and related automatic acceleration of the Notes from being triggered by the filing of a petition for recognition of the Scheme pursuant to chapter 15 of the U.S. Bankruptcy Code or by any other part of the Restructuring.

12.    The requisite consents for each of the Consent Solicitation Amendments were received on or prior to February 7, 2018, demonstrating significant support for the Restructuring, from holders of 98.09% of the aggregate principal amount of the 2021 Notes, and Scheme Creditors holding 87.73% of the aggregate principal amount of the 2023 Notes, which consents are now irrevocable.

13.    Other than the 2021 Notes Restructuring Amendments, which will become effective conditional on the Restructuring Effective Date, the other Consent Solicitation Amendments have already become effective.

F.    **The English Proceeding**

14.    To effectuate the Scheme, on February 15, 2018, the Debtor applied to the English Court for permission to convene a meeting of its creditors for the purpose of considering and approving the Scheme. The English Court considered that application at the Convening Hearing on February 19, 2018 and issued the Convening Order which, among other things: (i) ordered the convening of the Scheme Meeting of the Scheme Creditors (i.e., holders of the 2023 Notes) on March 20, 2018; (ii) ordered that notice of the Scheme, together with an explanatory statement and proxy forms for voting at the Scheme Meeting, be made available to the Scheme Creditors; and (iii) authorized the appointment of the Foreign Representative to act as a foreign representative in this Chapter 15 Case. See Willcocks Declaration, ¶ 3. As only the Scheme Creditors, comprised of the holders of the 2023 Notes, are affected by the Scheme, the Scheme contains only one voting class.

15.    Shortly following the Convening Hearing, and in accordance with the Convening Order, copies of the following documents were made available to all Scheme Creditors: ( i ) notice convening the Scheme Meeting; (ii) terms of the Scheme; (iii) an account holder letter, including a voting form for the Scheme Creditors (including guidance notes for the completing the voting form); and (iv) the Explanatory Statement (collectively, the "Notes Restructuring Documents"), at https://sites.dfkingltd.com/avanti (the "Scheme Website") maintained by D.F. King (the "Information and Tabulation Agent").   The Notes Restructuring Documents were posted on the Scheme Website and the Information and Tabulation Agent also sent a notice via email directing the Scheme Creditors to the Scheme Website to each DTC Participant of which the Information and Tabulation Agent is aware.

16.    Following the Scheme Meeting, and upon receiving the necessary votes in favor of the Scheme from the Scheme Creditors, the English Court will conduct the Sanction Hearing.

## RELIEF REQUESTED

17.    Pursuant to this Verified Petition, the Foreign Representative respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as Exhibit A, that: (a) recognizes the English Proceeding as a "foreign main proceeding"; (b) recognizes the Foreign Representative as the "foreign representative" in respect of the English Proceeding; (c) recognizes and enforces in the United States, on the date on which a copy of the Sanction Order has been delivered to the Register of Companies, the Scheme, the Convening Order, and the Sanction Order (the "English Orders"); (d) grants a stay of execution against any assets of the Debtor and the Subsidiary Guarantors (including intangible assets) in the United States and application of section 362 of the Bankruptcy Code in this Chapter 15 Case pursuant to sections 1520(a)(1), 1521(a) and 105(a) of the Bankruptcy Code; and (e) grants certain additional relief pursuant to sections 1507 and 1521 of the Bankruptcy Code, including the recognition and enforcement of the

Releases and Guarantor Releases as set forth in the Scheme.  The relief requested in this Verified

Petition is without prejudice to any additional relief, including recognition and enforcement of the

Sanction Order, if not entered prior to the date of the hearing on this Verified Petition, as well as

the other English Orders, if and when entered.

## **BASIS FOR RELIEF**

18.    The Foreign Representative and the Debtor seek to fully implement the terms of

the Scheme to effectuate the Restructuring.  Towards that end, the Scheme and the Sanction Order

must be binding and enforceable in the United States, and holders of the 2023 Notes must be

precluded from taking any actions in the United States that may frustrate the Restructuring

effectuated by the English Proceeding.

19.    For the reasons set forth below and in the Supporting Documents, the relief sought

herein is appropriate under chapter 15.

### A.    **The Debtor Is Eligible to File for Relief Under Section 109(a) of the Bankruptcy Code**

20.    Under section 109(a) of the Bankruptcy Code, which applies in chapter 15 cases, a

foreign debtor must reside, have a domicile or place of business, or property in the United States

to be eligible to file a chapter 15 petition.  See Drawbridge Special Opportunities Fund LP v. Barnet

(In re Barnet), 737 F.3d 238 (2d Cir. 2013).  Section 109(a) of the Bankruptcy Code does not

require a specific quantum of property in the United States, nor does it indicate when or for how

long such property must have a U.S. situs.  See, e.g., In re Berau Capital Res. PTE. Ltd., 540 B.R.

80, 82 (Bankr. S.D.N.Y. 2015).  Cases have accordingly held that bank accounts, attorney retainers

deposited in New York, or causes of action owned by the foreign debtor with a situs in New York

satisfy the "property in the United States" eligibility requirement of section 109(a) of the

Bankruptcy Code.  See In re Octaviar Admin. Pty Ltd., 511 B.R. 361, 369-74 (Bankr. S.D.N.Y.

2014) ("[A] line of authority . . . supports the fact that prepetition deposits or retainers can supply 'property' sufficient to make a foreign debtor eligible to file in the United States.") (citations omitted); In re Barnet, 737 F.3d at 247 (holding cash in client trust account maintained by the foreign representative's U.S. counsel satisfied the section 109(a) requirement); see also In re Yukos Oil Co., 321 B.R. 396, 407 (Bankr. S.D. Tex. 2005); In re Global Ocean Carriers, Ltd., 251 B.R. 31, 38-39 (Bankr. D. Del. 2000).

21.     Here, the Debtor is eligible to be a debtor under chapter 15 of the Bankruptcy Code as the Debtor has property in the United States and in this District, thereby satisfying the requirements of section 109(a) of the Bankruptcy Code.  Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), as counsel to the Foreign Representative and the Debtor, holds a $100,000 retainer in a non-interest bearing account located with JPMorgan Chase in New York (the "Retainer Account").  The Debtor's funds remain in the Retainer Account as of the date hereof and are the Debtor's property (subject to Milbank's rights under its engagement letter).

22.     In addition, the 2023 Indenture is governed by New York law, which has separately been found to give rise to property rights supporting debtor eligibility under section 109(a) of the Bankruptcy Code.  See Willcocks Declaration, ¶ 28; see also Berau, 540 B.R. at 83-84 (holding that foreign debtor was eligible to be a debtor under section 109(a) of the Bankruptcy Code because of (a) an interest in its U.S. counsel's retainer account, and (b) intangible contract rights under a New York law governed indenture).

## B.     The Procedural and Substantive Requirements of Chapter 15 of the Bankruptcy Code Are Satisfied

23.     A petition for recognition of a foreign proceeding must comply with the procedural requirements set forth in section 1515 of the Bankruptcy Code.  See 11 U.S.C. §§ 1504, 1515. Substantive requirements must also be satisfied before a court issues a recognition order. These

include: (a) that the English Proceeding is a "foreign proceeding," and more specifically, a "foreign main proceeding"; and (b) that Patrick Willcocks is a proper "foreign representative." 11 U.S.C. § 1517. Here, as described below, the Petition, along with the Supporting Documents, all comply with the Bankruptcy Code's procedural and substantive filing requirements and establish that the Foreign Representative and the Debtor are entitled to the requested relief.

1.    The Petition Complies with Section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4)

24.    The Foreign Representative and the Debtor duly and properly commenced this Chapter 15 Case by filing the Petition and the Supporting Documents, accompanied by all fees, documents and information required by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing: (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (ii) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of the Chapter 15 Case, and (iii) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code; (c) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representative; and (d) a certified copy of the Convening Order.  See Willcocks Declaration ¶ 33; see also In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code."), aff'd, 389 B.R. 325 (S.D.N.Y. 2008).

25.    Under section 1516(b) of the Bankruptcy Code, the Court is entitled to presume the authenticity of all the documents referenced above that were filed in connection with the

Chapter 15 Case.  Accordingly, the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and this Chapter 15 Case was properly commenced. See 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

> ## 2.    The Substantive Requirements for Recognition also are Satisfied

26.    Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, an order recognizing a foreign proceeding "shall" be entered if, in addition to the satisfaction of section 1515 of the Bankruptcy Code as described above, "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; [and] (2) the foreign representative applying for recognition is a person or body . . . ."  11 U.S.C. § 1517(a).  See In re Overnight & Control Comm'n of Avanzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008). As explained below, the English Proceeding, the Foreign Representative and this Petition satisfy all of the foregoing requirements.

> ### (a)    The English Proceeding is a Foreign Proceeding

27.    The English Proceeding is a foreign main proceeding and, as such, satisfies the first condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  Section 101(23) of the Bankruptcy Code defines "foreign proceeding" as:

> [A] collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The statute defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  See 11 U.S.C. § 1502(3).

28.    As described further in the Angel Declaration, there should be little doubt that the English Proceeding qualifies as a "foreign proceeding" under section 101(23) of the Bankruptcy Code.  The English Proceeding is pending in a foreign country, England (a constituent member of

the political union comprising the United Kingdom), under a law that allows companies to effectuate binding compromises or arrangements, including the restructuring of liabilities, with their members or creditors (or any class of them) (i.e., Part 26 of the Companies Act) and is therefore an "adjustment of debt." See Angel Declaration ¶ 10. The English Proceeding is a judicial proceeding in that it required the Convening Order to convene the Debtor's Scheme Meeting and will require the Sanction Order for the Scheme to ultimately be sanctioned, each issued by the English Court, a judicial body of England and Wales. See id. at ¶¶ 11-14. Parties in interest may object to the proposed Scheme at the Convening Hearing and the Sanction Hearing. See id. Further, section 1516(a) of the Bankruptcy Court entitles this Court to presume that the foreign proceeding is a "foreign proceeding," if the decision commencing the foreign proceeding so indicates. See 11 U.S.C. § 1516(a). Here the English Court has, in the Convening Order, authorized the appointment of the Foreign Representative as ["foreign representative in any proceedings under chapter 15 of the United States Bankruptcy Code . . ."]. See Convening Order at ¶ 21.

29.     Additionally, U.S. courts have consistently recognized English proceedings regarding schemes of arrangement under the Companies Act as "foreign proceedings" for purposes of chapter 15 of the Bankruptcy Code. See, e.g., In re YH Ltd., Case No. 16-12262-SCC (Bankr. S.D.N.Y. Sept. 8, 2016) [Dkt. No. 14]; In re OIC Run-Off Ltd. & London & Overseas Ins. Co. Ltd., Case No. 15- 13054-SCC (Bankr. S.D.N.Y. Jan. 11, 2016) [Dkt. No. 18]; In re Towergate Fin. Plc, Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015) [Dkt. No. 16]; In re B. Endeavour Shipping Co. Ltd., Case No. 15-10246-REG (Bankr. S.D.N.Y. Mar. 10, 2015) [Dkt. No. 10].

30.     Accordingly, the English Proceeding is a foreign proceeding under chapter 15 of

the Bankruptcy Code.

(b)    *The English Proceeding Constitutes a Foreign Main Proceeding*

31.    In addition to qualifying as a "foreign proceeding" under section 101(23), the English Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." See 11. U.S.C. § 1502(4). Section 1516(c) of the Bankruptcy Code further provides that "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Courts generally equate the term "center of main interests" with the concept of "principal place of business" under U.S. law. See, e.g., In re Millennium Global Emerging Credit Master Fund Ltd., 458 B.R. 63, 72 (Bankr. S.D.N.Y. 2011) (quoting In re Tri-Cont'l Exch. Ltd., 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006)), aff'd 474 B.R. 88 (S.D.N.Y. 2012); In re Basis Yield Alpha Fund (Master), 381 B.R. 37, 48 (Bankr. S.D.N.Y. 2008).

32.    Here, the Debtor is incorporated in the United Kingdom and its registered offices and headquarters are in London. See Willcocks Declaration ¶ 7. The Court may therefore presume that the United Kingdom constitutes the Debtor's "center of main interests." 11 U.S.C. § 1516(c). Moreover, the evidence unequivocally supports the statutory presumption. A significant proportion of the Debtor's existing terrestrial assets are located in the United Kingdom. See Willcocks Declaration at ¶ 7. Given the presumption of section 1516(c) of the Bankruptcy Code and the supporting factual information presented in this Petition, as further detailed in the Supporting Documents, the United Kingdom constitutes the Debtor's "center of main interests" and the English Proceeding constitutes a "foreign main proceeding" under the Bankruptcy Code.

(c)    *Patrick Willcocks is a Proper "Foreign Representative"*

33.    The second requirement for recognition of a foreign proceeding under section

1517(a) of the Bankruptcy Code is that the foreign representative applying for recognition be:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

34.    The Foreign Representative in this case is an individual who has been (1) duly appointed by the Debtor's board of directors as foreign representative of the English Proceeding and (2) authorized by the Court to act as "foreign representative" pursuant to the Convening Order.    See Willcocks Declaration ¶ 3.[16]    Accordingly, Patrick Willcocks is a "foreign representative" as defined in the Bankruptcy Code.    See 11 U.S.C. § 1516(a) ("If the decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a foreign representative, the court is entitled to so presume."); In re SphinX, Ltd., 351 B.R. 103, 116-17 (Bankr. S.D.N.Y. 2006), aff'd, Krys v. Official Comm. of Unsecured Creditors of Refco Inc. (In re SphinX Ltd.), 371 B.R. 10 (S.D.N.Y. 2007) (holding that section 101(24) of the Bankruptcy Code was satisfied where foreign representatives submitted a "copy of the Cayman Court's order appointing them to administer the [d]ebtors' winding up under [Cayman law] and authorizing their commencement of these chapter 15 cases . . .").

---

[16]    See Ad Hoc. Grp. of Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.), 470 B.R. 408, 412 (N.D. Tex. 2012), aff'd, 701 F.3d 1031 (5th Cir. 2012), cert. dismissed, 569 U.S. 944 (2013) (recognizing that a board of directors may authorize a person to act as the company's foreign representative in a chapter 15 proceeding); In re Compania Mexicana de Aviacion, S.A. de C.V., Case No. 10-14182 (MG) (Bankr. S.D.N.Y. Nov. 8, 2010) [Dkt. No. 261] (same). Section 1515(b) of the Bankruptcy Code specifically provides that in the absence of a "certified copy of the decision commencing such foreign proceeding and appointing the foreign representative" or "a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative," a chapter 15 petition may be accompanied by "any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." 11 U.S.C. § 1515(b).

**C.    The Court Should Grant Discretionary Relief Pursuant to Sections 1507 and 1521**

35.    The Foreign Representative submits that, in accordance with sections 1507 and 1521 of the Bankruptcy Code, this Court should grant any relief requested in the Proposed Order that goes beyond the automatic relief granted pursuant to section 1520 – including enforcement of the Releases and injunctions in the Scheme, including the Guarantor Releases. See Scheme §§ 2.3, 3(a), 5.2, 6.2, 6.3 and 6.4.

36.    Upon recognition of a foreign proceeding, section 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" to a foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors," provided that the interests of creditors and other interested entities are sufficiently protected.  11 U.S.C. §§ 1521(a), 1522(a).   Such relief may include, but is not limited to:

(1)    staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a);

(2)    staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a);

(3)    suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a);  . . . and

(4)    granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

37.    Additionally, the Court may act under section 1507 of the Bankruptcy Code to provide "additional assistance" to a foreign representative, provided that such assistance is

"consistent with the principles of comity."   11 U.S.C. § 1507; see also In re Atlas Shipping A/S,

404 B.R. 726, 737-38 (Bankr. S.D.N.Y. 2009).[17]

38.   In deciding whether to grant additional relief under chapter 15, courts are guided

by principles of comity and cooperation with foreign courts.  See, e.g., Atlas Shipping, 404 B.R.

at 738;  In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 389

B.R 325, 333 (S.D.N.Y. 2008).  The Supreme Court has held that a foreign judgment should not

be challenged in the United States if the foreign forum provides:

> [A] full and fair trial abroad before a court of competent jurisdiction, conducting
> the trial upon regular proceedings, after due citation or voluntary appearance of the
> defendant, and under a system of jurisprudence likely to secure an impartial
> administration of justice between the citizens of its own country and those of other
> countries, and there is nothing to show either prejudice in the court, or in the system
> of laws under which it [is] sitting . . .

Hilton v. Guyot, 159 U.S. 113, 202-03 (1895); see also Victrix S.S. Co., S.A. v. Salen Dry Cargo

A.B., 825 F.2d 709, 713 (2d Cir. 1987) ("Federal courts generally extend comity whenever the

foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States

citizens or violate domestic public policy."); In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 238 B.R.

25, 60, 66-68 (Bankr. S.D.N.Y. 1999), aff'd, 275 B.R. 699 (S.D.N.Y. 2002) (comity should be

accorded to foreign court orders as long as "it is shown that the foreign court is a court of competent

jurisdiction, and that the laws and public policy of the forum state and the rights of its residents

will not be violated" (quoting In re Gee, 53 B.R. 891, 901 (Bankr. S.D.N.Y. 1985))).

---

[17]   Section 1507(b) provides that in determining whether to provide additional assistance:

[T]he court shall consider whether such additional assistance, consistent with the principles of
comity, will reasonably assure—(1) just treatment of all holders of claims against or interests in the
debtor's property; (2) protection of claim holders in the United States against prejudice and
inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential
or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's
property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the
provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

39.     The need to extend comity to foreign proceedings is particularly salient in the bankruptcy context because "[t]he equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding" to bind all creditors and comprehensively effectuate a plan of reorganization.   Atlas Shipping, 404 B.R. at 737 (quoting Victrix, 825 F.2d at 713-14).   Accordingly, this Court has often enforced third-party releases similar to the Guarantor Releases in foreign proceedings under section 1507 of the Bankruptcy Code.   See, e.g., In re Towergate Fin. plc, Case No. 15-10509-SMB (Bankr. S.D.N.Y. Mar. 27, 2015) [Dkt. No. 16]; In re New World Res. N.V., Case No. 14-12226-SMB (Bankr. S.D.N.Y. Sept. 9, 2014) [Dkt. No. 20]; In re Magyar Telecom B.V., Case No. 13-13508-SHL (Bankr. S.D.N.Y. Dec. 11, 2013) [Dkt. No. 26]; In re Ocean Rig UDW Inc., 570 B.R. 687 (Bankr. S.D.N.Y. 2010) (recognizing and enforcing terms of scheme that released subsidiary guarantees); In re Metcalfe & Mansfield Alt. Inv., 421 B.R. 685, 696 (Bankr. S.D.N.Y. 2010) ("principles of enforcement of foreign judgments and comity in chapter 15 cases strongly counsel approval of enforcement in the United States of the third-party non-debtor release and injunction provisions included in the Canadian Orders, even if those provisions could not be entered in a plenary chapter 11 case."); In re Sino-Forest Corp., 501 B.R. 655, 665 (Bankr. S.D.N.Y. 2013) (enforcing foreign order containing third-party releases).

40.     The United States and the United Kingdom share the same common law traditions and fundamental principles of law.   The Scheme Creditors have a full and fair opportunity to vote on and be heard in connection with the Scheme, in a manner consistent with U.S. standards of due process. See Angel Declaration, ¶¶ 12, 17-18.   Moreover, failure to enforce the Scheme Creditors' releases of claims against the Debtor will result in prejudicial treatment of certain creditors to the detriment of the Debtor's reorganization efforts and will prevent the fair and efficient

23

administration of the Restructuring.  If this Court declines to enforce the Releases in the Scheme, then certain Scheme Creditors or other entities could seek to obtain judgments in the United States against the Debtor to obtain greater recoveries than those to which they are entitled under the Scheme.  Likewise, the Guarantor Releases must be approved to prevent similar actions against the Guarantor Subsidiaries, to prevent Scheme Creditors from obtaining more than the pro rata treatment to which they are entitled pursuant to the Scheme.  If the Scheme Creditors can effectively evade the terms of the Scheme and the Restructuring by commencing actions in the United States, the Debtor, the Subsidiary Guarantors or others involved in the Restructuring would be required to defend any such proceedings and deplete the resources of the restructured business and prejudice its reorganized value.  Furthermore, the releases of claims against the Debtor apply to the Scheme Creditors only, and the Scheme cannot be sanctioned without the approval of a majority in number and at least 75% in value of the Scheme Creditors voting at the Scheme Meeting.  Thus, principles of comity support enforcement of the Scheme and the releases of claims against the Debtor therein, whether or not the same relief could be ordered in a plenary chapter 11 case.  See Metcalfe, 421 B.R. at 700 ("Principles of comity in chapter 15 cases support enforcement of the Canadian Orders in the United States whether or not the same relief could be ordered in a plenary case under chapter 11.").

D.   **The Requested Relief Comports with the Bankruptcy Code and U.S. Public Policy**

41.   Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States. 11 U.S.C. § 1506. However, the public policy exception is narrowly construed.  See, e.g., In re Metcalfe & Mansfield Alt. Inv., 421 BR 685 (Bankr. S.D.N.Y. 2010).  Moreover, the public policy exception must be viewed in light

of one of the fundamental goals of the Bankruptcy Code – the centralization of disputes involving

the debtor. See, e.g., In re Ionosphere Clubs, Inc., 922 F.2d 984, 989 (2d Cir. 1990) ("The

Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate

and its reorganization in the Bankruptcy Court . . . .")  (internal citations and quotation marks

omitted).  Indeed, as some courts have noted:

> American courts have long recognized the need to extend comity to foreign
> bankruptcy proceedings because the equitable and orderly distribution of a debtor's
> property requires assembling all claims against the limited assets in a single
> proceeding; if all creditors could not be bound, a plan of reorganization would fail.

Atlas Shipping, 404 B.R. at 733 (internal quotation marks omitted) (citing Victrix, 825 F.2d at 713-

14); see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 424

(2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate

creditor claims that are the subject of a foreign bankruptcy proceeding.").

42.     Recognizing the English Proceeding (including the Scheme and Sanction Order)

and enforcing the releases of claims against the Debtor in the Scheme will assist the orderly

administration of the scheme of arrangement by the English Court, consistent with the public policy

of the United States that the Bankruptcy Code embodies.  See In re Sino-Forest Corp., 501 B.R. at

665 (enforcing foreign order containing third-party releases, noting that, in the Second Circuit,

"where the third-party releases are not categorically prohibited, it cannot be argued that the

issuance of such releases is manifestly contrary to public policy").  If this Court does not recognize

the Scheme, including the Releases of claims against the Debtor and the Guarantor Releases

against the Subsidiary Guarantors, then the English Proceeding faces legal uncertainty and the

Scheme, and therefore the Restructuring, may not succeed.

43.     Additionally, failure to enjoin the Scheme Creditors or enforce the Releases,

including the Guarantor Releases, in the United States may result in unnecessary enforcement costs

or the piecemeal disposition of assets to the detriment of the Debtor and its various stakeholders. The purpose of chapter 15 is to prevent such harms. See 11 U.S.C. § 1501(a) (noting that, among other objectives as fully described below, chapter 15 facilitates "the rescue of financially troubled businesses" and provides for the "fair and efficient administration of cross-border insolvencies").

44.     Avoiding such potential outcomes through the formal recognition of the English Proceeding and enforcement of the Scheme and the Sanction Order in the United States is consistent with U.S. public policy as embodied in the Bankruptcy Code.

45.     Additionally, Congress articulated specific objectives for chapter 15 of the Bankruptcy Code including:

(1)     cooperation between--

(A)     courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and

(B)     the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2)     greater legal certainty for trade and investment;

(3)     fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor;

(4)     protection and maximization of the value of the debtor's assets; and

(5)     facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a).

46.     Recognition of the English Proceeding as a foreign main proceeding comports with all of these objectives. It will enable the Debtor to fully implement the Scheme, which forms an integral part of the Restructuring (which has the support of the Debtor's key stakeholders), thereby preserving value and saving jobs. Granting recognition to the English Proceeding also facilitates the fair and efficient administration of the Debtor's assets, centralizing its Restructuring in the

Debtor's home jurisdiction, subject to supervision by the English Court.   Doing so promotes
cooperation between foreign jurisdictions and comity among tribunals.   Notably, because
implementation of the Scheme and the Restructuring is contingent upon this Court's entry of the
Proposed Order recognizing the Scheme, failure to enter the Proposed Order will prevent the
Debtor from implementing the Scheme and consummating the Restructuring.

47.    In sum, the Chapter 15 Case effectuates the principal objectives Congress
articulated when it enacted chapter 15 of the Bankruptcy Code, and otherwise comport with
U.S. public policy.

## NOTICE

48.    Notice of this Motion will be provided to: (i) the Debtor; (ii) the United States
Trustee; (iii) Hogan Lovells US LLP, 875 Third Avenue, New York, New York 10022 (Attn:
Robin Keller), counsel to the 2023 Trustee; (iv) Akin Gump Strauss Hauer & Feld LLP, Bank of
America Tower, 1 Bryant Park, New York, New York 10036 (Attn: Phillip C. Dublin and Naomi
Moss), U.S. counsel to the Ad Hoc Group; and (iv) all parties entitled to notice in accordance with
the *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002(m), 2002(q), 9006(c)(1)
and 9007 for an Order Scheduling a Hearing on Recognition of Foreign Main Proceeding and
Specifying Form and Manner of Service of Notice.*

## NO PRIOR REQUEST

49.    No previous request for the relief sought herein has been made by the Foreign
Representative to this Court or any other court.

## <u>CONCLUSION</u>

WHEREFORE, the Foreign Representative respectfully requests the entry of the

Proposed Order granting the relief requested herein and grant such other relief as the Court deems

just and appropriate.

Dated: February 21, 2018
New York, New York

By:    /s/ Peter Newman
        Peter Newman, Esq.

        MILBANK TWEED HADLEY & MCCLOY LLP
        28 Liberty Street
        New York, New York 10005
        Telephone:  (212) 530-5000
        Peter Newman, Esq.
        Craig Price, Esq.

        *Attorneys for Patrick Willcocks*
        *as Foreign Representative*

## VERIFICATION OF CHAPTER 15 PETITION

Patrick Willcocks, pursuant to 28 U.S.C. § 1764, hereby declares under penalty of perjury under the laws of the United States as follows:

I am the authorized foreign representative of the Debtor with respect to the English Proceeding. In that capacity, I have full authority to verify the *Verified Petition for Recognition of Foreign Main Proceeding and Certain Other Relief* (the "Verified Petition") on behalf of the Debtor.

I have read the Verified Petition and the other Supporting Documents (as defined therein), and I am informed and believe that the factual allegations contained therein are true and accurate to the best of my knowledge, information and belief.

Dated: February 21, 2018

_____

## **EXHIBIT A**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| AVANTI COMMUNICATIONS GROUP PLC[1] | )    Case No. 18-_____ |
| | ) |
| | ) |
| Debtor in a Foreign Proceeding. | )    Chapter 15 |
| | ) |

### ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND CERTAIN RELATED RELIEF

This matter was brought before the Court by Patrick Willcocks, the duly appointed foreign representative (the "Foreign Representative") of Avanti Communications Group plc (the "Debtor"), a private limited liability company incorporated under the laws of England and Wales, in connection with a proceeding (the "English Proceeding") commenced under Part 26 of the Companies Act 2006 (the "Companies Act"), as modified, amended or re-enacted from time to time, and pending before the High Court of Justice of England and Wales (the "English Court") concerning a scheme of arrangement (the "Scheme").

The Foreign Representative filed a *Verified Petition for Recognition of Foreign Main Proceeding and Certain Related Relief* [Dkt. No. 2] (the "Verified Petition" and, together with the Voluntary Chapter 15 Petition [Dkt. No. 1], the "Petition"), on February 21, 2018 commencing the Chapter 15 Case under chapter 15 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), for entry of an order granting, among other things, recognition to the English Proceeding as a "foreign main proceeding" pursuant to chapter 15 of the Bankruptcy Code;

---

[1]    Avanti Communications Group plc is the Debtor in this chapter 15 case (the "Chapter 15 Case") and the identifying four digits of the tax identification number of such Debtor are: Avanti Communications Group plc (0137). The location of the Debtor's corporate headquarters and registered office is Cobham House, 20 Black Friars Lane, London, EC4V 6EB, United Kingdom. The Debtor's company registration number is 06133927.

and it appearing that this Court has jurisdiction to consider the Petition pursuant to 28 U.S.C.

§§ 157 and 1334; and it appearing that venue of this case and the Petition in this District is proper

pursuant to 28 U.S.C. §1410; and it appearing that this matter is a core proceeding pursuant to 28

U.S.C. §157(b)(2)(P); and it appearing that adequate and proper notice of the Petition has been

given, and that no other or further notice need be given; and a hearing having been held to consider

the relief requested in the Petition; and no objections or other responses having been filed that have

not been overruled, withdrawn, or otherwise resolved; and upon consideration of the Willcocks

Declaration and the Angel Declaration (together, the "Supporting Documents"), each filed on

February 21, 2018; and upon the record of the hearing and all of the proceedings had before the

Court; and the Court having found and determined that the relief sought in the Petition is in the

best interests of the Debtor, its creditors, and all other parties in interest; and that the legal and

factual bases set forth in the Petition establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, accordingly, the Court hereby **FINDS AND**

**CONCLUDES THAT**:

(A)    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334, section 1501 of the Bankruptcy Code and the Amended Standing Order of Reference

Dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re:  Title 11, 12

Misc.  00032 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.);

(B)    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) and the Court

may enter a final order consistent with Article III of the United States Constitution.

(C)    Venue is proper in this District pursuant to 28 U.S.C. § 1410.

(D)     The Debtor has tangible and intangible property and property rights within this District and, therefore, the Debtor is eligible to be a debtor in a chapter 15 case pursuant to 11 U.S.C. §§ 109 and 1501.

(E)     This case was properly commenced pursuant to 11 U.S.C. §§ 1504, 1509 and 1515.

(F)     The Petition meets the requirements of 11 U.S.C. § 1515 and Bankruptcy Rule 1007(a)(4).

(G)     The English Proceeding is a "foreign proceeding" within the meaning of 11 U.S.C. § 101(23).

(H)     The English Proceeding is before the English Court in London, England, where the Debtor's center of its main interests is located and, as such, the English Proceeding is entitled to recognition as a "foreign main proceeding" pursuant to 11 U.S.C. §§ 1502(4) and 1517(b)(1).

(I)     The English Proceeding is governed in accordance with applicable English law, as it may be amended from time to time, is a court-supervised process, and is entitled to recognition by this Court pursuant to 11 U.S.C. §§ 1515 and 1517(a).

(J)     The Foreign Representative is the duly appointed foreign representative of the Debtor within the meaning of 11 U.S.C. § 101(24).

(K)     The Debtor and the Foreign Representative are entitled to all of the relief set forth in 11 U.S.C. § 1520 without limitation.

(L)     The Debtor and the Foreign Representative are entitled to all of the relief set forth herein under 11 U.S.C. §§ 1507 and 1521, subject to the modification as set forth herein upon order of the Court pursuant to 11 U.S.C. § 1522(c).

(M)     The Foreign Representative is entitled to discretionary relief pursuant to 11 U.S.C. §§ 1507 and 1521, including the granting of the Releases (including the Guarantor Releases).

(N)     The relief granted herein is necessary and appropriate, in the interest of the public and international comity, and consistent with the public policy of the United States.

(O)     The relief granted hereby pursuant to 11 U.S.C. §§ 1507, 1515, 1517, 1520 and 1521 is necessary to effectuate the purposes of chapter 15, to protect the Debtor and the interests of its creditors, and is not manifestly contrary to United States public policy or the policies of the Bankruptcy Code.

(P)     Absent the relief granted hereby, the Debtor and its Subsidiary Guarantors may be subject to the prosecution of judicial, quasi-judicial, arbitration, administrative or regulatory actions or proceedings by the Scheme Creditors against them or their property, thereby interfering with and causing harm to, the Debtor, its creditors, and other parties in interest in the English Proceeding and, as a result, the Debtor, its creditors and such other parties in interest would suffer irreparable injury for which there is no adequate remedy at law.

(Q)     Absent the requested relief, the efforts of the Debtor, the English Court and the Foreign Representative in conducting the English Proceeding and effectuating the Restructuring and the Scheme and English law may be frustrated by the actions of individual Scheme Creditors, a result contrary to the purposes of chapter 15.

(R)     Each of the injunctions contained in this Order (i) is within the Court's jurisdiction, (ii) is essential to the success of the Scheme, (iii) is an integral element of the Scheme or to its effectuation, (iv) confers material benefits on, and is in the best interests of, the Debtor and its

creditors, including, without limitation, the Scheme Creditors, and (v) is important to the overall objectives of the Restructuring.

(S)    Appropriate notice of the filing of, and the hearing on, the Petition was given, which notice was deemed adequate for all purposes, and no further notice need be given.

For all of the foregoing reasons, and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.    The Petition and requested relief therein is granted.

2.    The English Proceeding is granted recognition as a foreign proceeding as defined in 11 U.S.C. § 101(23) and pursuant to 11 U.S.C. § 1517(a).

3.    The English Proceeding is a court-supervised proceeding governed in accordance with applicable English law, as it may be amended from time to time, and is granted recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1) and is entitled to the protections of 11 U.S.C. § 1520(a).

4.    Patrick Willcocks is the duly appointed and authorized foreign representative of the Debtor within the meaning of 11 U.S.C. § 101(24).

5.    All relief afforded foreign main proceedings pursuant to 11 U.S.C. § 1520 is hereby granted, including, without limitation, the application of the protection afforded by the automatic stay under section 362 of the Bankruptcy Code to the Debtor and to the Debtor's property that is within the territorial jurisdiction of the United States.

6.    The English Proceeding, the Scheme, the Convening Order and ultimately, the Sanction Order, including any and all existing and future extensions, amendments, restatements, or supplements authorized by the English Court, are hereby recognized, granted comity, and given

full force and effect in the United States, on a final basis, and are binding on and enforceable against all parties in the United States whether or not they actually voted in favor of the Scheme.

7.      As of the Restructuring Effective Date (being the date upon which all of the conditions precedent to the Restructuring have been satisfied), and except as otherwise provided in this Order, all persons and entities are permanently enjoined and restrained, in each case to the extent not inconsistent with the Scheme, from:

(a)      taking or continuing any act to obtain possession of, or exercise control over, including but not limited to, attaching, repossessing, seizing, or disposing of, as applicable, the Debtor, the Subsidiary Guarantors, or any of their property (including intangible property) that is located within the territorial jurisdiction of the United States or any proceeds thereof (collectively, the "Property");

(b)      transferring, encumbering, relinquishing or disposing of any Property other than to the Foreign Representative;

(c)      commencing, continuing, or enforcing any action or legal proceeding within the territorial jurisdiction of the United States (including, without limitation, arbitration, mediation or any judicial, quasi-judicial, administrative or regulatory action, proceedings or process whatsoever), including by way of counterclaim, (each individually, an "Action") against the Debtor, the Subsidiary Guarantors or any of the Property in respect of any claims;

(d)      any judgment, wherever and whenever obtained, to the extent such judgment is a determination of a liability of the Debtor with respect to any debt or liability cancelled, discharged, or restructured under the Scheme or as a result of English law, is unenforceable in the United States;

(e)      commencing or continuing any act or Action to create, perfect or enforce any lien, set-off or other claim against the Debtor, the Subsidiary Guarantors or the Property, including, without limitation, rights under any contracts with the Debtor; provided, however, that no Action described in sections 555, 556, 557, 559, 560, 561, 562 and 1519(d) and (f) of the Bankruptcy Code shall be enjoined by such injunction;

(f)      commencing any suit, action, or proceeding in the territorial jurisdiction of the United States against the Debtor, the Subsidiary Guarantors, the Foreign Representative, or any of their respective successors, directors, officers, agents, employees, representatives, advisors, or attorneys in respect of any claim or cause of action, in law or in equity, arising out of relating to any action taken or omitted to be taken in connection with this Chapter 15 Case, the Scheme, or to resolve any dispute arising out of any provision of the Scheme, or English law relating to the Scheme, including the Releases and/or the Guarantor Releases;

6

(g)     declaring or considering the filing of the English Proceeding or this Chapter 15 Case a default or event of default under any agreement, contract or arrangement; and

(h)     taking any action in contravention to or inconsistent with the Scheme, including, without limitation, against the Debtor, the Subsidiary Guarantors, or any of the Property within the territorial jurisdiction of the United States.

8.     As of the Restructuring Effective Date, the English Proceeding, all prior orders of the English Court, and all discharges of debt (and injunctions against enforcement of claims and interests against the Debtor, the Subsidiary Guarantors, and the Property) granted in the English Proceeding shall be and hereby are granted comity and given full force and effect in the United States, and all holders of such discharged or cancelled debt are permanently enjoined from taking any and all acts to enforce or collect against or from the Debtor, the Subsidiary Guarantors or the Property.

9.     As of the Restructuring Effective Date, any judgment, wherever and whenever obtained, to the extent such judgment is a determination of the liability of the Debtor or any other person released under the Scheme pursuant to the Releases under the Scheme (including the Guarantor Releases), with respect to any debt cancelled, discharged or restructured under the Scheme, or as a result of English law relating to the Scheme, is unenforceable in the United States, in each case, to the extent inconsistent with the Scheme or such law.

10.     Notwithstanding anything to the contrary contained herein, nothing in this Order shall in any respect enjoin any police or regulatory act of a governmental unit, including a criminal action or proceeding.

11.     The administration or realization of all or part of the assets of the Debtor within the territorial jurisdiction of the United States is entrusted to the Foreign Representative, and the Foreign Representative is established as the exclusive representative of the Debtor in the United States.

12.    The Foreign Representative, the Debtor and their respective agents are authorized to serve or provide any notices required under the Bankruptcy Rules or local rules or orders of this Court.

13.    No action taken by the Foreign Representative, the Debtor, or their respective successors, agents, representatives, advisors, or counsel in preparing, disseminating, applying for, implementing, or otherwise acting in furtherance of or in connection with the English Proceeding, this Order, this Chapter 15 Case, or any adversary proceeding herein, or any further proceeding commenced hereunder, shall be deemed to constitute a waiver of the rights or benefits afforded such persons under 11 U.S.C. §§ 306 and 1510.

14.    This Order shall be served by electronic mail to the extent email addresses are available and otherwise by U.S. mail, first-class postage prepaid or overnight, upon: (i) the Notice Parties (as defined in the *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002(m), 2002(q), 9006(c)(1) and 9007 for an Order Scheduling a Hearing on Recognition of Foreign Main Proceeding and Specifying Form and Manner of Service of Notice* filed contemporaneously herewith); (ii) the Office of the United States Trustee; (iii) all parties that received notice of the Petition; and (iv) those parties requesting notice pursuant to Bankruptcy Rule 2002.  Such service and notice is good and sufficient service and adequate notice for all purposes.

15.    The Petition, Supporting Documents and this Order shall be made available upon request to the Foreign Representative's U.S. counsel, Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty St., New York, New York 10005 (Attn:  Craig Price).

16.    The English Court shall have exclusive jurisdiction to hear and determine any suit, action, claim, or proceeding, and to settle any dispute that may arise out of the construction or

interpretation of the Scheme in connection with the administration of the Scheme; provided, however, that nothing in this Order affects the validity of provisions determining governing law and jurisdiction, whether contained in any contract between the Debtor and any of the Scheme Creditors or otherwise.

17.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to implementation of this Order, including, but not limited to:   (a) the enforcement, amendment or modification of this Order; (b) any requests for additional relief or any adversary proceeding brought in or through this Chapter 15 Case; and (c) any request by an entity for relief from the provisions of this Order, for cause shown, as to any of the foregoing, and provided the same is properly commenced and within the jurisdiction of this Court.

18.    This Order is without prejudice to the Foreign Representative requesting any additional relief in the Chapter 15 Case, including seeking recognition and enforcement in the United States of any further orders issued by the English Court, including any final order sanctioning the Scheme, as such order may be amended or supplemented from time to time.

19.    The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted by this Order.

20.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry and shall constitute a final order within the meaning of 28 US.C. § 158(a).  The Clerk is hereby directed to enter this Order on the docket for this Chapter 15 Case.

Dated: _____
              New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE